T.C. Memo. 1997-217


UNITED STATES TAX COURT


CHANDER AND ASHIMA K. KANT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11188-95.                    Filed May 8, 1997.


Chander Kant, pro se.

Craig Connell, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PANUTHOS, Chief Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.[1] Respondent determined a deficiency in

---

[1] All section references are to the Internal Revenue Code as amended, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

petitioners' 1993 Federal income tax in the amount of $4,877 and an accuracy-related penalty under section 6662(a) in the amount of $975.[2]  After a concession by respondent,[3] the issue for decision is whether, for the purposes of the alternative minimum tax, petitioner Chander Kant (petitioner) was an employee with respect to items of income and expense related to his activities in Singapore.

                        FINDINGS OF FACT

     Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.  Petitioners resided in Short Hills, New Jersey, at the time that the petition was filed.

     Petitioner is an associate professor of economics at Seton Hall University (Seton Hall), and petitioner Ashima K. Kant (Ms. Kant) is an associate professor of nutrition at Queens College, City University of New York.  In June 1993, Seton Hall granted petitioner's request for sabbatical leave.  In his application, petitioner maintained that a sabbatical leave would "result in at least two papers publishable in respectable journals, and will

---

[2]  Respondent claimed an increased deficiency in her answer to petition in the amount of $960 (for a total deficiency of $5,837), asserting that petitioners were not entitled to a claimed child care credit.  The parties agree that petitioners' entitlement to the claimed child care credit is contingent upon our determination of the other issues.  Therefore, we do not separately address this issue.

[3]  Respondent concedes that petitioners are not liable for the accuracy-related penalty under sec. 6662(a).

strengthen the * * * University's visibility."  Seton Hall's faculty guide provided:  "The major purpose of a sabbatical leave is to provide the opportunity for continued professional growth and new or renewed intellectual achievement through study, research, scholarly writing, or professionally related travel." The faculty guide further provided that faculty members on sabbatical leave must obtain written approval of the provost before accepting paid employment.

In support of his sabbatical leave in 1993, petitioner accepted an appointment as a "Senior Fellow" at the National University of Singapore (NUS).  Ms. Kant was on leave without pay during that period.  Petitioners resided in Singapore for approximately 5 months during the 1993 taxable year.  While in Singapore, petitioner engaged in research and prepared a seminar paper which was presented to the Department of Economics at NUS. NUS provided petitioner with an office and library access, as well as housing and child care benefits.  The record does not contain any detailed documentation concerning the precise nature of petitioner's relationship with NUS.[4]  Furthermore, the record does not indicate whether petitioner received written approval from Seton Hall before accepting the appointment at NUS.

Petitioner received $27,191 from NUS during the 1993 taxable year.  The Inland Revenue Authority of Singapore treated

---

[4]  Petitioners maintain that some of their documentation was destroyed by rain.

petitioner as an employee of NUS, and required NUS to withhold a portion of the amounts payable to petitioner.  Upon leaving Singapore, petitioner was required to complete a form relating to an employee's cessation of employment.

On their U.S. Federal income tax return for the taxable year 1993, petitioners reported the amounts received from NUS as wages or salary, and claimed the expenses related to the stay in Singapore on Schedule A as unreimbursed employee business expenses.  Respondent's notice of deficiency recomputed petitioners' tax liability under the alternative minimum tax. Respondent determined that, for the purpose of computing the alternative minimum tax, petitioner's unreimbursed employee business expenses could not be deducted.  See Johnson v. Commissioner, T.C. Memo. 1993-530.

After receiving the notice of deficiency, petitioners submitted an amended 1993 return which reported items of income and expense related to petitioner's activity in Singapore on Schedule C, rather than on Schedule A.  To support this position, petitioners argue that petitioner was not an employee with respect to his activities at NUS.  Petitioners concede that if the Court should determine that petitioner was an employee, respondent's determination in the notice of deficiency is correct.  Respondent concedes that if the Court should determine that petitioner was not an employee with respect to his activities at NUS, petitioners may deduct the expenses in

question for the purposes of computing their alternative minimum tax liability.

At trial, petitioners also argued that the amount received from NUS was a fellowship. Petitioners suggest that since the amounts were received pursuant to a fellowship, the "receipts are not called wages, and are not subject to the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax Act (FUTA), and the Collection of Income Tax at Source on Wages." Petitioners conclude that the amount received from NUS was properly reportable as self-employment income, and, therefore, petitioner was not an employee of NUS.

OPINION

We begin by noting that respondent's determinations are presumed correct, and petitioners bear the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Work-related expenses incurred by an independent contractor are deductible "above the line" under section 62(a)(1), whereas unreimbursed expenses incurred by an employee are deductible "below the line" as itemized deductions. Hathaway v. Commissioner, T.C. Memo. 1996-389. Section 56(b)(1)(A)(i) provides that, for the purposes of calculating a taxpayer's

alternative minimum taxable income, no deductions shall be allowed for miscellaneous itemized deductions.

The Internal Revenue Code does not define the term "employee".  Whether the employer-employee relationship exists is a factual question.  Weber v. Commissioner, 103 T.C. 378, 386 (1994), affd. 60 F.3d 1104 (4th Cir. 1995).  Among the relevant factors in determining the nature of an employment relationship are the following: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the taxpayer's opportunity for profit or loss; (4) the permanency of the relationship between the parties to the relationship; (5) the principal's right of discharge; (6) whether the work performed is an integral part of the principal's business; (7) what relationship the parties believe they are creating; and (8) the provision of benefits typical of those provided to employees. NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258-259 (1968); Weber v. Commissioner, supra at 387; Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988).  No single factor is determinative; rather, all the incidents of the relationship must be weighed and assessed.  NLRB v. United Ins. Co. of Am., supra at 258; Weber v. Commissioner, supra at 387.  The most important factor in determining whether a common law employment relationship exists, however, is the right to control the manner in which the

taxpayer's work is performed. Weber v. Commissioner, supra at 387. We must consider not only the actual control exercised by the principal, but also the principal's right of control. Id. at 387-388; Professional & Executive Leasing, Inc. v. Commissioner, supra at 233-234.

In order for a principal to retain the requisite control over the details of a taxpayer's work, the principal need not stand over the taxpayer and direct every move made by that person. Weber v. Commissioner, supra at 388; Professional & Executive Leasing, Inc. v. Commissioner, supra at 234. Moreover, the exact amount of control required to find an employer-employee relationship varies with different occupations. United States v. W.M. Webb, Inc., 397 U.S. 179, 192-193 (1970). With respect to individuals providing professional services, there is a lower threshold level of control for the purposes of determining the existence of employee status. Weber v. Commissioner, supra at 388; Professional & Executive Leasing, Inc. v. Commissioner, supra at 234. In this regard, we have stated: "[T]he control of an employer over the manner in which professional employees shall conduct the duties of their positions must necessarily be more tenuous and general than the control over nonprofessional employees." James v. Commissioner, 25 T.C. 1296, 1301 (1956).

Petitioners contend that petitioner was not an employee with respect to his activities at NUS. In so doing, petitioners argue that NUS and Seton Hall imposed little control over his

sabbatical activities, and that the benefits received by either NUS or Seton Hall from petitioner's sabbatical activities were attenuated and incidental.[5] On the other hand, respondent argues that petitioners have failed to produce adequate documentation to establish that petitioner was anything other than an employee with respect to his activities at NUS.

Petitioners have failed to present sufficient evidence concerning petitioner's relationship with NUS. Although there is some evidence relating to the activities performed during the sabbatical itself, we are particularly troubled by the absence of documentation pertaining to petitioner's agreement with NUS. The omitted documents are those which would assist in defining the nature of the relationship between petitioner and NUS. For example, one missing document mentioned by petitioner at trial was the actual letter from NUS to petitioner, appointing him as a "Senior Fellow". The available documentary evidence, including forms from the Inland Revenue Authority of Singapore, indicates that NUS treated petitioner as an employee. Therefore, petitioner has failed to meet his burden of proving that he was anything other than an employee. Rule 142(a).

---

[5] Since the payments in question were made directly to petitioner by NUS, and there is nothing in this record indicating that Seton Hall had some financial arrangement with NUS or otherwise directed petitioner's activities at NUS, we look only to the relationship between petitioner and NUS to determine if he was an employee.

We now address petitioners' argument that the amounts paid to petitioner by NUS were provided pursuant to a fellowship arrangement. Petitioners' argument in this regard, as we understand it, is that amounts received pursuant to fellowships are not considered wages under the Internal Revenue Code, and, therefore, petitioner was not an employee of NUS.

Petitioners do not cite any case law or statute to support this position. We believe, however, that petitioners have in mind the provisions of section 117. Section 117(a) excludes from gross income "any amount received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii)". The term "qualified scholarship" refers to "any amount received by an individual as a scholarship or fellowship grant to the extent the individual establishes that, in accordance with the conditions of the grant, such amount was used for qualified tuition and related expenses". Sec. 117(b)(1). Furthermore, to qualify for the exclusion, the payments cannot be conditioned upon the recipient's providing of services, such as teaching or research. Sec. 117(c).

In this instance, petitioner has offered no proof that he was a degree candidate at NUS or that he used any portion of the proceeds for qualified tuition. Additionally, as more fully discussed above, petitioner has failed to establish that he was not required to perform teaching, research, or other activities

as a condition for receiving payments as an employee from NUS.
Cf. <u>Spiegelman v. Commissioner</u>, 102 T.C. 394, 406 (1994)
(concluding that recipient of taxable research fellowship was not
liable for self-employment tax).

Therefore, we conclude that the $27,191 received from NUS
was properly reportable as wage income.  Furthermore, as a result
of this conclusion, respondent's claim for an increased
deficiency (relating to the disallowed child care credit) is
sustained.

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for respondent as to the</u>
<u>deficiency and for petitioners</u>
<u>as to the accuracy-related</u>
<u>penalty</u>.